**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**KENNEDY PINTO, KATIA PINTO, and**
**RANDY WINNER on behalf of themselves**
**and other similarly situated,**

                                                   **Index No. 12 Civ. 3730**

                    **Plaintiffs,**

      **v.**

**FELIDIA RESTAURANT, INC. and LIDIA**
**BASTIANICH**

                    **Defendants.**
-----------------------------------------------------------x

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

D. Maimon Kirschenbaum
Denise A. Schulman
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the proposed class*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  BACKGROUND ................................................................................................... 2

   A.   Procedural History ..................................................................................... 2

   B.   Discovery ..................................................................................................... 3

   C.   Settlement Discussions .............................................................................. 4

III. SUMMARY OF SETTLEMENT TERMS .......................................................... 4

   A.   Settlement Fund ......................................................................................... 4

   B.   The Release ................................................................................................. 6

   C.   Attorneys' Fees And Costs And Service Awards ..................................... 6

IV.  ARGUMENT ....................................................................................................... 7

   A.   The Class Should Be Conditionally Certified For Settlement Purposes ... 8

     i.   Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a) ............ 9

       a.   Numerosity is satisfied ....................................................................... 9

       b.   Commonality is satisfied .................................................................... 9

       c.   Typicality is satisfied ........................................................................ 10

       d.   Adequate representation is satisfied ............................................... 11

     iii.   The Court Should Certify The Settlement Class Under Rule 23(b)(3) ... 11

       a.   Common questions predominate ..................................................... 12

       b.   A class action is a superior mechanism .......................................... 13

     iv.   The Court should appoint Plaintiffs' counsel as class counsel ............ 14

   C.   Preliminary Approval Of The Agreement Is Appropriate ......................... 15

i.    There are no grounds to doubt the fairness of the agreement, which is the product of extensive, arm's length negotiations ................................................................. 17

ii.   The settlement contains no obvious deficiencies.................................................... 17

iii.  The settlement falls within the range of possible approval.................................... 18

D.   The Proposed Plan Of Class Notice............................................................................ 20

V.   CONCLUSION .................................................................................................................... 22

Plaintiffs Kennedy Pinto, Katia Pinto, and Randy Winner (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, respectfully submit this memorandum of law in support of their motion for preliminary approval of the Joint Stipulation of Settlement and Release dated May 7, 2013 ("Settlement Agreement").[1]  Defendants Felidia Restaurant, Inc. and Lidia Bastianich (collectively, "Defendants") have agreed to the terms of the Settlement Agreement and do not object to the relief requested herein.

## I.   INTRODUCTION

Subject to Court approval, the parties have settled this case for $250,000.  The proposed settlement resolves the claims asserted in this action and satisfies all of the criteria for preliminary settlement approval under federal law.  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the settlement class under Fed. R. Civ. P. 23(b)(3); (3) appoint Joseph & Kirschenbaum LLP ("JK") as class counsel; (4) approve the Notice of Proposed Class Action Lawsuit Settlement (the "Notice"), attached as Exhibit A to the Agreement and the parties' plan for its distribution; (5) set a deadline of 45 days from the mailing of Notice for Settlement Class Members to object to the settlement or opt out of the Class; and (5) schedule a hearing ("Fairness Hearing") at which the Court will consider Plaintiffs' motion for final approval of the settlement, attorneys' fees and costs, and enhancement awards

Preliminary approval and conditional class certification will allow the parties to notify the Class Members of the settlement and of their right to object or opt out.  Preliminary approval does not require the Court to rule on the ultimate fairness of the settlement, but to make only an

---

[1]   In support of this motion, Plaintiffs submit the declaration of Denise A. Schulman ("Schulman Decl."), attaching thereto as Exhibit 1 ("Ex. 1")  a true and correct copy of the Settlement Agreement, as Exhibit 2 ("Ex. 2") a true and correct copy of the proposed Notice, and as Exhibit 3 ("Ex. 3") a proposed order.

"initial evaluation" of the fairness of the proposed settlement and whether there is "probable cause" to submit it to the class members.  *See In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (the court need only find "'probable cause' to submit the [settlement] to class members and hold a fullscale hearing as to its fairness"); *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623 (PAC),No. 04 Civ. 4488 (PAC), No. 06 Civ. 5672 (PAC), 2009 U.S. Dist. LEXIS 108736, at *14-15 (S.D.N.Y. Nov. 17, 2009) (same). The Court should permit notice of the settlement to be sent to class members because the settlement falls within the "range of possible approval." *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC), 2010 U.S. Dist. LEXIS 75362, at *11 (S.D.N.Y. Jun. 1, 2010).

## II.     BACKGROUND

### A.     Procedural History

Plaintiffs are former service employees at Felidia Restaurant ("Felidia") in Manhattan. On May 10, 2012, Plaintiffs filed this lawsuit against Defendants asserting, among other claims, that (1) Defendants unlawfully retained a portion of service employees' tips in violation of New York Labor Law § 196-d ("§ 196-d"); (2) Defendants improperly paid service employees pursuant to a tip credit in violation of the Fair Labor Standards Act ("FLSA"); and (3) Defendants failed to pay service employees New York's spread of hours premium when their workdays lasted longer than 10 hours.  (Schulman Decl. ¶¶ 4, 5.)  Plaintiffs brought this action on behalf of themselves and all other non-exempt tipped employees (other than sommeliers) employed by Defendants within the last three years for the FLSA claims and within the six years prior to the filing of this lawsuit for the New York claims.  (*Id*. at ¶ 4.)

Specifically, Plaintiffs alleged that Defendants retained from service employees' tips an amount equal to 5% of nightly wine sales.  Plaintiffs maintained that this violated § 196-d and

rendered Defendants ineligible for a tip credit under the FLSA, but Defendants nonetheless paid service employees pursuant to a tip credit.  Plaintiffs further maintained that Defendants also used a portion of gratuities from private events to pay an event coordinator, who Plaintiffs alleged was not a tip-eligible employee.  (*Id.* at ¶ 6.)  Defendants deny all of Plaintiffs allegations and maintain that their compensation practices were lawful.

Around the time that Plaintiffs filed this action, Defendants sent to putative class members a release of claims in which Defendants offered to pay each putative class member some amount of money in exchange for a release of all New York wage and hour claims.  The release did not, however, purport to release FLSA claims.  Ultimately, 68 out of approximately 111 putative class members signed a release.  (*Id.* at ¶ 7.)

On or around June 22, 2012, Defendants consented to send notice of the FLSA claims in this action to all non-exempt tipped employees, other than sommeliers, who worked at Felidia on or after June 22, 2009.  11 individuals (the "Opt-In Plaintiffs") subsequently submitted consent to sue forms and became Plaintiffs in this action.  (*Id.* at ¶ 8.)

### B.    Discovery

The parties engaged in significant discovery.  Defendants produced five years of tip sheets, as well as the Plaintiffs and Opt-In Plaintiffs' personnel files, time records, and payroll records, and documents relating to Felidia's sommeliers, who Defendants contend received some or all of the tips that Plaintiffs allege were retained by Defendants.  (*Id.* at ¶ 9.)  These documents allowed Plaintiffs to estimate the total potential damages in this case and evaluate the merits of their claims.

### C.      Settlement Discussions

In November 2012, the parties agreed to mediate this case before Ruth Raisfeld, an experienced employment law mediator.  The mediation was scheduled for January 15, 2013.  (*Id.* at ¶ 10.)  In preparation for the mediation, the parties exchanged additional information, and Plaintiffs calculated the estimated damages and shared that calculation with Defendants.  (*Id.* at ¶ 11.)  Shortly before the scheduled mediation, the parties engaged in settlement discussions, but reached an impasse on January 14, 2013 with respect to the scope of any release.  Specifically, while the parties initially agreed in principle to settle this action for $190,000, it subsequently became clear that while Plaintiffs intended a $190,000 settlement to be on behalf of Plaintiffs, the Opt-In Plaintiffs, and putative class members who did not sign a release with Defendants, Defendants wanted the FLSA claims of individuals who had not opted in to the action – including individuals who signed a release with Defendants – to be included in the settlement. (*Id.* at ¶ 12.)  The parties cancelled the mediation in light of these positions but continued to discuss a possible resolution.  Ultimately, the parties agreed to settle this action for $250,000, which includes payment to all tipped employees with extant FLSA claims.  (*Id.* at ¶ 13.)

## III.     SUMMARY OF SETTLEMENT TERMS

### A.      Settlement Fund

The Settlement Agreement provides that Defendants shall pay a maximum settlement amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) (the "Settlement Payment"). (Ex. 1 ¶¶ 1.22, 3.1, 3.2, 3.3.)  The Settlement Payment includes attorneys' fees and costs, awards to Class Members, Opt-In Plaintiffs, and FLSA Settlement Plaintiffs, service awards to the three named Plaintiffs, and up to $3,000 that may be applied towards the retention of a claims administrator.  (*Id.* at ¶¶ 3.1, 3.2, 3.3, 3.4(C).)

The Settlement Agreement provides for payments to three categories of employees: (1) FLSA Opt-In Plaintiffs, defined as anyone who has filed a consent to sue form prior to execution of the Settlement Agreement, *i.e.*, the Plaintiffs and Opt-In Plaintiffs; (2) FLSA Settlement Plaintiffs, defined as all individuals who worked in specified positions between the earlier of three years prior the Fairness Hearing or July 1, 2010 and May 7, 2013 who are not FLSA Opt-In Plaintiffs and who endorse their settlement checks; and (3) NYLL Class Members, defined as all individuals who worked in specified positions between May 10, 2006 and May 7, 2013 and who have not previously signed a release of claims with Defendants.  (*Id*. at ¶¶ 1.9, 1.11, 1.12, 1.15.)

43% of the Net Settlement Fund will be attributed to FLSA damages and distributed to the FLSA Opt-In Plaintiffs and FLSA Settlement Plaintiffs on a point basis.  Each FLSA Opt-In Plaintiff will receive one point for every hour worked between May 10, 2009 and February 28, 2011, and each FLSA Settlement Plaintiff will receive one point for every hour worked between the earlier of three years prior to the Fairness Hearing or July 1, 2010 and February 28, 2011.  (*Id*. at 3.4(B)(1).)

57% of the Net Settlement Fund will be attributed to New York Labor Law damages and distributed to all NYLL Class Members on a point basis.  Each NYLL Class Member will receive one point for every dollar received in tips between May 10, 2006 and February 28, 2011.  (*Id*. at 3.4(B)(2).)

No person eligible for payment under the Settlement Agreement will receive less than $50.  FLSA Opt-In Plaintiffs, FLSA Settlement Plaintiffs, and NYLL Class Members who began working for Defendants on or after March 1, 2011 will receive $50.  (*Id*. at ¶ 3.4(A).)  This reflects the fact that Defendants changed their practices on or about March 1, 2011 in a way that significantly decreased the likelihood that Plaintiffs would prevail on their claims after that time.

Within thirty (30) days after this Court enters final approval of the settlement, Defendants will deliver to JK all payments due under the Settlement Agreement unless Defendants chose to retain a claims administrator.  In the event that Defendants do not choose to retain a claims administrator, JK will mail all settlement checks within seven (7) days of receiving them from Defendants.  All settlement checks will be valid for 90 days, and applicable tax withholdings will be made.  (*Id*. at ¶ 3.4(E)(F)(H).)

### B.      The Release

In return for the above consideration, all NYLL Class Members who do not opt out of the NYLL Class will release all wage and hour claims under the NYLL, and all FLSA Opt-In Plaintiffs will release all FLSA claims.  All FLSA Settlement Plaintiffs who endorse their settlement checks will also release all FLSA claims against Defendants.  The Settlement Agreement does not release the FLSA claims of any FLSA Settlement Plaintiffs who do not endorse their settlement checks.  (*Id*. at ¶ 3.6.)

### C.      Attorneys' Fees And Costs And Service Awards

JK will apply for a percentage of the Maximum Settlement Amount as attorneys' fees.  (*Id*. at ¶ 3.2.)  The Court need not rule on fees and costs now.  JK will file a formal motion for approval of fees along with their motion for final approval of the settlement.  *See* Fed. R. Civ. P. 23(h).

In addition to their individualized awards, the named Plaintiffs, who actively participated in this lawsuit and spent many hours working with JK, will apply for an additional payment of $3,333.33 each in recognition of the services they rendered on behalf of the Class.  Plaintiffs will make this motion simultaneously with their motion for final approval of the Settlement Agreement.  (*Id*. at ¶ 3.3.)  Such service awards "are common in class action cases and are

important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation." *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *26 (E.D.N.Y. Jan. 20, 2010).

Both the application for attorneys' fees and the application for service awards are separate from approval of the Settlement Agreement, and will be fully briefed prior to final approval. Thus, the Court need not decide those issues now.

## IV.   ARGUMENT

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class basis. Judicial proceedings under Fed. R. Civ. P. 23 ("Rule 23") have established a defined procedure and specific criteria for settlement approval in class action settlements. There are four necessary steps:

(1) Certifying the class for settlement purposes;

(2) Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

(3) Dissemination of mailed and/or published notice of settlement to all affected Class members; and

(4) A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See Khait,* 2010 U.S. Dist. LEXIS 4067 at *4; *In re Initial Pub. Offering,* 226 F.R.D 186, 191 (S.D.N.Y. 2005). These procedures safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests. *Torres*, 2010 U.S. Dist. LEXIS 75362 at *9-10.

With this motion, Plaintiffs request that the Court take the first three steps in the settlement approval process by certifying the class for settlement purposes and granting

preliminary approval of the Settlement Agreement, approving the Notice, and authorizing distribution of the Notice.

### A.     The Class Should Be Conditionally Certified For Settlement Purposes

Prior to granting preliminary approval of a settlement, district courts determine whether the proposed settlement class is a proper class for settlement purposes.  *See e.g., Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997) (explaining that courts should examine whether the proposed class would be adequately represented and fairly treated by a class action settlement). Conditional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing.  *Dorn v. Eddington Sec.*, No. 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931, at *3 (S.D.N.Y. Jan. 20, 2011).

The Court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites of Rule 23(a) - numerosity, commonality, typicality and adequacy of representation - and one of the three requirements of Rule 23(b).  Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir 2001), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006).  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court has great discretion in determining whether to certify a class.  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  *See Willix v. Healthfirst,*

*Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2010 U.S. Dist. LEXIS 139137 at *5-6 (E.D.N.Y. Nov. 12, 2010).   However, in exercising this discretion, courts should give "proper deference to the private consensual decision of the parties."   *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10 (citation omitted).

### i.      Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)

The NYLL Class is defined as all individuals who work or worked for Defendants as a Captain, Server, Waiter, Busser, Runner, Backwaiter, Bartender, and/or Barback from May 10, 2006 through May 7, 2013 and who have not previously executed an agreement purporting to release all NYLL claims against Defendants.   The NYLL Class meets the requirements of numerosity, commonality, typicality, and adequacy of representation under Rule 23(a).

### a.      Numerosity is satisfied

The parties estimate that the Class includes at least 43 members.   (Schulman Decl. ¶ 14.) Thus, the Class is so numerous that joinder of all Class Members is impracticable.   *See Consolidated  Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (holding that numerosity can be presumed at a level of 40 members).

### b.      Commonality is satisfied

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."   *General Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982).   *See Daniels v. City of New York,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("The commonality requirement will be met if the named Plaintiffs share a common question of law or fact with the grievances of the prospective class.").

Here, there are several questions of law and fact common to the Settlement Class, including the primary issue in this case, *i.e.,* whether Defendants retained a portion of service

9

employees' tips.  *See, e.g., Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) ("Commonality is clearly satisfied in  this instance; class members assert the same legal claim based on *World Yacht* against a service charge policy that was in all material respects nearly identical for each Plaintiff and for each event.").

### c.    Typicality is satisfied

Typicality is also satisfied.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted).  *See, e.g., Campos v. Goode*, 10 Civ. 0224 (DF), 2011 U.S. Dist. LEXIS 22959, at *6-7 (S.D.N.Y. Mar. 4, 2011) (finding typicality met because "[t]he named plaintiffs suffered the same alleged injury as did the class members — Defendants' failure to pay overtime and "because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims").  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *Gortat v. Capala Bros.*, 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *13 (E.D.N.Y. Apr. 9, 2010).

Here, typicality is satisfied because "each class member's claim 'arises from the same course of events,' produced by a 'single system,' namely Defendants'" practice of removing from the tip pool an amount equal to 5% of nightly wine sales. *Spicer*, 269 F.R.D. at 337.

### d.    Adequate representation is satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Central Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

Here, Plaintiffs are adequate representatives of the proposed class, have fairly and adequately represented and protected the interests of all Class Members, and have worked hard in achieving this settlement. (Schulman Decl. ¶ 15.) There is no indication here that the Plaintiffs' and the NYLL Class Members' interests are at odds. Accordingly, adequacy is satisfied.

### iii.    The Court Should Certify The Settlement Class Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Satisfaction of Rule 23(a) "goes a

long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

In sum, the Class is suitable for certification, and the Court should certify the Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval of the Agreement.

### a.    Common questions predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney*, 280 F.3d at 136. The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the NYLL Class are unified by common factual allegations – that all NYLL Class Members were non-exempt, tipped employees of Defendants who were part of a tip pool from which Defendants removed an amount equal to 5% of nightly wine sales. The Class is also unified by a common legal theory – that Defendants in fact retained those tips in violation of the NYLL. *See Shahriar v. Smith & Wollensky Rest. Group, Inc*., 2011 U.S. App. LEXIS 19625 (2d Cir. N.Y. Sept. 26, 2011) ("Finally, as to Rule 23(b)(3)'s requirement that class-wide issues predominate over individual issues, Plaintiffs have alleged that all servers were subject to Park Avenue's uniform tip-sharing or tip-pooling system."); *Castagna v. Madison Square Garden, L.P.*, 09-CV-10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 24885, at *4-5 (S.D.N.Y. Feb. 8, 2011) ("'Common factual allegations — that Defendant failed to pay Class Members for all overtime they worked - and a common legal theory — that Defendant violated

the FLSA and NY Labor Law - predominate over any factual or legal variations among class members.'" (citation omitted); *deMunecas v. Bold Food, LLC*, 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644, at *7-8 (S.D.N.Y. Aug. 23, 2010) (same).

### b. A class action is a superior mechanism

Rule 23(b)(3)'s second part analyzes whether "'the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy.'" Fed. R. Civ. P. 23(b)(3); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions, and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs and the NYLL Class have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will achieve economies of scale for putative Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications. *Campos*, 2011 U.S. Dist. LEXIS 22959 at *8. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (individual actions for relatively small claims would result in less "settlement leverage, significantly reduced resources and no greater prospect for recovery").

### iv.     The Court should appoint Plaintiffs' counsel as class counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B).  In making this determination, the Court must consider counsel's (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(C).

Plaintiffs' counsel meet all relevant criteria. They did substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling wage and hour class actions; are well-versed in wage and hour and class action law; and are well-qualified to represent the interests of the class.  (Schulman Decl. ¶¶ 16-20.)  Courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in wage and hour class actions. *Sand*, 2011 U.S. Dist. LEXIS 36266 at *6 ("Plaintiffs' counsel, . . . Joseph, Herzfeld, Hester & Kirschenbaum, LLP . . ., have a record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on this case are competent and experienced."). *See also, e.g., Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009); *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002 (S.D.N.Y. Aug. 7, 2009); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009); *Chi Kong Leung v. Home Boy Rest.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 U.S. Dist. LEXIS 12556 (S.D.N.Y. Feb. 18, 2009).  (*See also* Schulman Decl. ¶¶ 18-20.)

Therefore, the Court should appoint the undersigned to serve as class counsel Class pursuant to Rule 23(g).

### C.       Preliminary Approval Of The Agreement Is Appropriate

There is a strong preference in the law for the resolution of class action litigation through settlement.  *See McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157 (E.D.N.Y. 2009) ("'The compromise of complex litigation is encouraged by the courts and favored by public policy.'") (citations omitted).

Preliminary approval is the first step in the settlement process.  It simply allows notice to issue to the class and for class members to object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input at a fairness hearing.   It is the fairness hearing that affords class members "an opportunity to present their views of the proposed settlement."  *In re Initial Public Offering,* 226 F.R.D. at 191.  Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *In re Prudential Sec. Inc. Ltd. Pshps. Litig*., 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members.").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties.  *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10-11; Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), § 11.25 (4th ed. 2002).  The court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its

fairness." *In re Traffic Executive Ass'n*, 627 F.2d at 634; *Newberg* § 11.25 ("If the preliminary

evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and

appears to fall within the range of possible approval," the court should permit notice of the

settlement to be sent to class members). *See also Danieli v. IBM*, No. 08 Civ. 3688 (SHS), 2009

U.S. Dist. LEXIS 106938, at *12 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval

where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally

related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and

the negotiating process that led to such agreement." *Frank*, 228 F.R.D. at 184. "A presumption

of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-

length negotiations between experienced, capable counsel after meaningful discovery." *Wal-

Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *Khait*, 2010 U.S. Dist. LEXIS

4067 at *13 (same); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same). *See also

D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("When a settlement is negotiated

prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its

fairness."). "Consequently, when evaluating a settlement agreement, the court is not to substitute

its judgment for that of the parties, nor is it to turn consideration of the adequacy of the

settlement 'into a trial or a rehearsal of the trial.'" *Wright*, 553 F. Supp. 2d at 343-44 (quoting

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)). *See also Saylor v. Lindley,* 456

F.2d 896, 904 (2d Cir. 1972) ("[S]ince the very purpose of a compromise is to avoid the trial of

sharply disputed issues and to dispense with wasteful litigation, the court must not turn the

settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the

likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits.") (internal citations omitted).

> ### i.    There are no grounds to doubt the fairness of the agreement, which is the product of extensive, arm's length negotiations

The first consideration in the preliminary-approval analysis is whether "the settlement is the result of serious, informed and non-collusive negotiations." *In re Medical X-Ray Film Antitrust Litig.,* Master File No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997).

The proposed settlement here is the product of extensive negotiations that culminated in a settlement conference. The negotiations were at all times hard-fought and at arm's length, and have produced a result that experienced counsel believe to be in the best interests of the Settlement Class. *See Clark*, 2010 U.S. Dist. LEXIS 47036 at *17-18 (where the settlement was achieved through experienced counsels' arm's-length negotiations, then, "[a]bsent fraud or collusion," "'[c]ourt[s] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted).

> ### ii.    The settlement contains no obvious deficiencies

The proposed settlement has no obvious deficiencies. The settlement provides for only modest service awards for the three named Plaintiffs in this lawsuit, who were instrumental in facilitating a resolution of this matter, in a *total* amount of $9,999.99. Plaintiffs expended significant time participating in discovery and communicating with counsel. Service awards for time, effort, risk and service do not improperly grant preferential treatment to class

representatives.  Rather, "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff."  *Khait,* 2010 U.S. Dist. LEXIS 4067 at *26 (approving awards of $15,000 and $10,000 for named plaintiffs in a wage and hour class action).

Finally, the settlement does not mandate excessive compensation for JK, which will apply for an award of attorneys' fees not to exceed 1/3 of the settlement fund and and reimbursement of expenses.  This is well "within the range of reasonable attorney fees awarded in the Second Circuit."  *deMunecas v. Bold Food, LLC*, 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644, at *22-23 (S.D.N.Y. Aug. 23, 2010) ("Class Counsel's request for 33% of the Fund is reasonable under the circumstances of this case and is consistent with the norms of class litigation in this circuit.") (citing cases).

> In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role.  Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL.

*Khait,* 2010 U.S. Dist. LEXIS 4067 at *22-23 (internal citations omitted).

### iii.    The settlement falls within the range of possible approval

As explained above, the Settlement Agreement was reached only after protracted arms' length negotiations and a settlement conference conducted by a magistrate judge between the parties and their counsel who fully considered the advantages and disadvantages of continued litigation.  Counsel for the parties believe that this settlement achieves all of the objectives of the litigation, namely a substantial monetary settlement to those employees of Defendants who were

not paid a portion of the mandatory gratuities that Defendants collected from all private event patrons.

JK, which has a great deal of experience in the prosecution and resolution of wage and hour class actions, has carefully evaluated the merits of this case and the proposed settlement. Even if the matter were to proceed to trial, JK acknowledges that the apparent strength of the claims in this case is no guarantee against a complete or partial defense verdict.  "Litigation inherently involves risks."  *deMunecas*, 2010 U.S. Dist. LEXIS 87644 at *14 (citation omitted). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *Campos*, 2011 U.S. Dist. LEXIS 22959 at *13 (same).   Nonetheless, the Settlement Fund amounts to almost all of the allegedly unpaid wages and tips that the NYLL Class and FLSA Settlement Plaintiffs could have recovered if they prevailed on all of their underlying claims.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount in the Agreement is more than reasonable.  *See Velez v. Novartis Pharms. Corp.*, 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *40-41 (S.D.N.Y. Nov. 30, 2010) ("[C]ourts often approve class settlements even where the benefits represent 'only a fraction of the potential recovery.'"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.").  (collecting cases); *Cf. Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving

$2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Khait,* at \*18 (quoting *Frank,* 228 F.R.D. at 186). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* "[A] 'settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 246-47 (E.D.N.Y. 2010) (quoting *Joel A. v. Guiliani,* 218 F.3d 132, 144 (2d Cir. 2000)). Furthermore, even if a judgment were obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed Settlement.

Thus, the Court should grant preliminary approval of the Settlement Agreement and direct that notice of it be given to the Class.

### D.    The Proposed Plan Of Class Notice

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.23(c)(2)(B). *See also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175-76 (1974) ("[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

Rule 23(e)(B) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or

compromise." Fed. R. Civ. P. 23(e)(B).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores,* 396 F.3d at 113 (internal citations omitted).  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Id.* at 114 (internal citations omitted).  Notice is "adequate if it may be understood by the average class member." *Newberg* § 11:53.

Here, JK will disseminate the Notice to all FLSA Opt-In Plaintiffs, FLSA Settlement Plaintiffs, and NYLL Class Members via first class mail at their last known addresses as maintained by Defendants.  For any Notice returned as undeliverable, JK will attempt a skip trace using the computer databases available and the information provided by Defendants.  Those individuals who are located using the skip trace will be sent an additional copy of the Notice. Thus, the proposed methods of notice comport with Rule 23 and the requirements of due process.

As for the content of the notice, Rule 23(c)(2)(B) provides:

The notice [to a rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:

- the nature of the action,

- the definition of the class certified,

- the class claims, issues, or defenses,

- that a class member may enter an appearance through counsel if the member so desires,

- that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice comports with the rule in all respects.  It describes the terms of the settlement, including the proposed allocation of attorneys' fees and service awards to the named Plaintiffs, provides specific information regarding the date, time, and place of the final approval hearing, clearly provides that Class Members may enter an appearance through their own counsel, discloses NYLL Class Members' right to exclude themselves from the settlement or object to any of its terms, and specifies the deadline and procedure for doing so, and warns of the binding effects of the settlement on those persons who remain in the Class.  *See Willix,* 2010 U.S. Dist. LEXIS 139137 at *9 (approving notice where it "adequately puts *Rule 23* Class Members on notice of the proposed settlement"); *In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). (*See also* Ex. 2.)

Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Class.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant Plaintiffs' motion for preliminary approval of the proposed settlement, conditional certification of the Settlement Class, and approval of the Notice.

22

Dated:  May 9, 2013                          Respectfully submitted,
       New York, New York


                                         /s/ Denise A. Schulman
                                         D. Maimon Kirschenbaum
                                         Denise A. Schulman
                                         JOSEPH & KIRSCHENBAUM LLP
                                         233 Broadway, 5th Floor
                                         New York, NY 10279
                                         (212) 688-5640
                                         (212) 688-2548 (fax)

                                         *Attorneys for Plaintiffs, FLSA Collective Plaintiffs,*
                                         *and the proposed class*